**SIGNED this 09 day of October, 2007.**

_____
**JOHN T. LANEY, III
UNITED STATES BANKRUPTCY JUDGE**
_____

```
            IN THE UNITED STATES BANKRUPTCY COURT

             FOR THE MIDDLE DISTRICT OF GEORGIA

                      COLUMBUS DIVISION


     IN RE:                        :
                                   :
     DEWAYNE ODELL BEASLEY          :     CASE NO. 07-40280 JTL
                                   :
          Debtor.                   :              CHAPTER 13
                                   :
```

**MEMORANDUM OPINION**

Before the court is creditor CitiFinancial Auto

Corporation's ("Citi") objection to confirmation of

Debtor's Chapter 13 plan in which Citi's secured claim in Debtor's 2005 Chevrolet Impala would be bifurcated into secured and unsecured portions and "crammed down." At issue is whether the plan was proposed in good faith, and whether the car was acquired for the "personal use" of the Debtor within the ambit of 11 U.S.C. § 1325(a); if the car was acquired for the Debtor's personal use, the claim cannot be bifurcated and the Debtor would have to pay the full amount of the claim ($25,900.91).

This matter was taken under advisement following a hearing on August 31, 2007. Post hearing, no briefs have been presented to the court. For the reasons set forth below, the Court holds that on the facts of this case, the Debtor did not acquire the vehicle for personal use, and therefore the claim can be bifurcated. Further, the Court holds that the Debtor's plan was not proposed in bad faith. Accordingly, Citi's objections to confirmation of Debtor's chapter 13 plan are OVERRULED.

## Findings of Fact

Dewayne Odell Beasley ("Debtor") and his wife, Jessica Lynn Beasley ("Debtor-Wife"), separately filed chapter 13 cases on April 6, 2007. On May 31, 2005, Debtor purchased a 2005 Chevrolet Impala, which was financed by Citi. Debtor

and Debtor-Wife were both named on the sales contract with Citi.

Debtor asserts and Citi does not dispute that the car was purchased for Debtor-Wife's use, and Debtor-Wife is not a debtor in this case. Debtor also asserts that he has never used the Impala, as he has his own vehicle, which he drives exclusively.

It is undisputed that the car was purchased for Debtor-Wife's use, and replaced a car that was used exclusively by Debtor-Wife.

Debtor-Wife's Chapter 13 plan did not provide for payment of the vehicle through her plan. Debtor-Wife's plan stated that the claim for the Impala would be paid through her husband's Chapter 13 plan. Citi did not object to confirmation of Debtor-Wife's plan, and her Chapter 13 was confirmed.

Debtor's Chapter 13 plan proposes to bifurcate and cram down Citi's claim. Citi objected to the confirmation of the plan, contending that its claim is covered by the "hanging paragraph" provision of §1325(a)(*), which prevents bifurcation of the claim.

**Discussion and Conclusions of Law**

**I. The Personal Use Issue**

There has been much debate in bankruptcy courts around the country as to the meaning and effect of the "hanging paragraph" provision added to § 1325(a) by BAPCPA. This Court has held, along with the majority of courts considering the section, that the hanging paragraph of § 1325(a)(*) simply has the effect of precluding debtors from bifurcating certain undersecured claims using § 506, as was common practice prior to the October 17, 2005 effective date of this BAPCPA provision.

Whatever the conclusion courts reach regarding the effect or meaning of the hanging paragraph, each court must determine whether the section applies by inquiring whether the four requirements of the section are satisfied: (1) the creditor has a purchase money security interest; (2) the debt was incurred within 910 days preceding the filing of the debtor's case; (3) the collateral for the debt consists of a motor vehicle; and (4) the motor vehicle was acquired for the personal use of the debtor.[1]

Requirements 1, 2, and 3 are not in issue in this case. The requirement that the motor vehicle be acquired

---

[1] 11 U.S.C. § 1325(a)(*) (2005).

for the personal use of the debtor hinges on the definition of "personal use."

In their arguments, Citi cites to the case of *In re Solis*[2]. Citi contends that *Solis* stands for the proposition that a Debtor's purchase of a vehicle for the family's use can satisfy the personal use requirement of §1325(a)(*).

The facts in *Solis* are similar to what the court is presented with here. In *Solis,* the court distinguished between two cars in issue. The automobiles in issue in *Solis* are 1) a Dodge Ram purchased for both the Debtor and her husband for commuting to work and other general purposes and 2)a Dodge Neon purchased on behalf of the Debtor's adult son, for which the son made all payments on the vehicle[3].

*Solis* applied a totality of the circumstances test to determine whether the cars in issue were acquired for the personal use of the Debtor. *Solis* held that a vehicle would be acquired for personal use if,

> at the time of acquisition, the acquirer intended that a significant, material portion of the use of the vehicle would be (a) for the benefit of the debtor in the bankruptcy case, (b) for non-business purposes, and (c) for satisfaction of debtor's wants, needs, or obligations[4].

---

[2] 356 B.R 398 (Bankr. S.D. Tx. 2006).
[3] *Id*. at 402.
[4] *Id*. at 411.

Applying the totality of the circumstances test in *Solis* led to the court ruling that the Dodge Ram was purchased for the personal use of the debtor. The truck was acquired with the understanding that Debtor would use the truck for her own errands and transportation, and it was later put to a myriad of personal uses, as well as Debtor's transportation to and from work[5].

The court reached the opposite conclusion in applying the test to the Dodge Neon. There, the court held that the car was not acquired for the Debtor's personal use because the son was the exclusive driver of the car, and the Debtor only acquired it for the son's use[6].

Applying the *Solis* standard in this case leads to the conclusion that the Impala was not acquired for the debtor's personal use. At the time of the acquisition, the car was acquired solely for the wife's use. The Debtor has testified that he has never driven the vehicle or used it for his own purposes. The situation in this case is analogous to the Dodge Neon acquired in *Solis*, inasmuch as in both cases the Debtor never intended to use the car at the time of acquisition, and never made any substantial use of the car thereafter. Therefore, there was intended no

---

[5] *Id*.
[6] *Id*. at 412.

significant or material portion of the use of the vehicle for the Debtor's benefit, and the use of the Chevy Impala cannot be characterized as "personal use."

*In re Jackson* reached the same result by applying the plain language of the statute[7]. In *Jackson*, the Debtor purchased a vehicle for his wife that he never used, and the Creditor objected to the cram down of its claim. The court held, however, that applying the plain meaning of the statute to the facts of the case where the Debtor made no personal use of the vehicle required the conclusion that the claim could be crammed down because the vehicle was not acquired for the Debtor's personal use[8].

For the above reasons, the Court concludes that the Chevy Impala was not acquired for Debtor's personal use.

## II. The Good Faith Issue

11 U.S.C 1325(a)(3) requires that a bankruptcy plan be proposed in good faith. The leading Eleventh Circuit case on the good faith issue is *In re Kitchens*[9]. *Kitchens* lists 11 factors that a bankruptcy court must consider to determine good faith, but the court is not limited to consideration of just these factors. The factor at issue in this case is the 5th factor, which states that a court

---

[7] 338 B.R. 923 (Bankr. M.D. Ga. 2006) (Walker, J.).
[8] *Id*. at 926.
[9] 702 F.2d 885.

should consider "the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13." [10] Citi contends that the actions Debtor has taken in filing his case on the same day as his wife and attempting to cram down its claim to retain the car without paying the full amount constitutes bad faith.

The facts are not contested in this case. The Debtor and his wife filed separate Chapter 13 cases on the same day. The Debtor-Wife's plan simply did not provide for any payment on the car. There is nothing in the record to indicate that Debtor-Wife made any other representation to Citi about payment on the Impala. Citi did not file an objection to confirmation in Debtor-Wife's case.

Debtor argues that the Bankruptcy Code created the loophole that allows Debtor to cram down Debtor-Wife's vehicle. The hanging paragraph definition of personal use, Debtor argues, allows Debtor spouses filing separately to cram down the spouse's car if the car was purchased for the spouse's use. Creditor could have objected to confirmation to the Wife's plan because the car was acquired for her personal use if it contended that her plan was filed in bad faith.

---

[10] *Id.* at 889.

While the court does not necessarily approve of the result in the case at hand, Congress must be presumed to know what it is doing when it passes legislation. Debtors' taking advantage of an apparent loophole in the legislation is not necessarily bad faith. Citi had an opportunity to object to confirmation of Debtor-Wife's plan and failed to do so. There is no basis for denying confirmation of Debtor's plan based on bad faith, because he is only attempting to do what the code allows him to do.

For the reasons set forth in this opinion, the Court will overrule Citi's objection to confirmation.

The court will further consider confirmation of Debtor's plan on October 26, 2007 at 9:00 A.M.